UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINE HILBER, | ) | CASE NO.:  1:22-CV-02305 |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MALLEY'S CANDIES, INC., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Counter-Plaintiff. | ) | |

Before the Court are Defendant Malley's Candies, Inc.'s ("Defendant" or "Malley's")

and Plaintiff Caroline Hilber's ("Plaintiff" or "Hilber") cross-motions for summary judgment.

(Docs. 75, 76).  Both motions are fully briefed.  (Docs. 75, 84, 86; Docs. 76, 81, 88.)  For the

reasons stated herein, Malley's Motion for Summary Judgment (Doc. 75) is DENIED.  Hilber's

Motion for Summary Judgment (Doc. 76) is DENIED in part and GRANTED in part.

I.     **BACKGROUND**

A.     **Statement of Facts**

Malley's is a chain of candy and confectionary stores in Northeastern Ohio.  (Doc. 75 at

2237.)[1]  Hilber is an independent consulting graphic design artist in Cuyahoga County, Ohio.

(Doc. 45 at 670, ¶ 4.)  In 2018, Hilber entered into a business relationship with Malley's as an

independent contractor graphic designer.  (*Id.* at 693, ¶¶ 80, 82.)  Hilber was hired by Dan

Malley, Vice President of Marketing for the company.  (Doc. 64-1, Hilber Depo., at 845-46, 849;

Doc. 65-1, Malley Depo., at 1007.)  Hilber's main contacts at Malley's were Dan Malley and his

assistant, Karen Shauer.  (Doc. 64-1 at 857; Doc. 65-1 at 1013-14.)  Hilber charged Malley's an

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

hourly rate of $50 per hour to perform the graphic design work for advertising campaigns.  (Doc. 64-1 at 852-54.)  The parties had no written agreement.  (*Id.*)  She regularly submitted invoices to Malley's based on this hourly rate.  (*Id.*)  Their independent contractor relationship existed from March 2018 to October 2021.  (Doc. 45 at 693, ¶ 82.)  Malley's purchased a camera for Hilber to use to create photography and artwork for advertising campaigns.  (Doc. 64-1 at 858-59, 877-79.)

Over the course of their relationship, Hilber submitted more than 60 invoices to Malley's between 2018 and 2021, totaling more than $230,000.  (Doc. 45 at ¶ 82.)  When Hilber created artwork for Malley's, she provided print-ready files, not the native files.  (Doc. 64-1 at 911-16.)  During their relationship, only Hilber modified her graphic designs.  (*Id.*)  In fact, Hilber recalled an instance where Dan Malley reprimanded another Malley's employee for making unauthorized changes to one of Hilber's designs.  (*Id.* at 901-02, 914-15.)

In late summer and early fall of 2021, Dan Malley decided he wanted to hire a full-time graphic designer instead of using independent contractors.  (Doc. 65-1 at 1069-70.)  In September 2021, Dan Malley offered Hilber a job as a full-time employee in Malley's Marketing Department.  (*Id.*)  Hilber declined the offer.  (*Id.*)  Around this time, on September 20, 2021, Hilber emailed Dan Malley and Karen Shauer.  Hilber stated:

> Good morning.  As an independent freelance contractor and under US Copyright laws, I own the rights to the work I have created.  This includes the native files and any early drafts, sketches, research or additional items required to create the work.  I have always provided you with finished, press-ready files for all the work, which I will continue to do, but I own the native files.
>
> In addition to that, any fonts and stock art necessary to edit this work is licensed to me, since I personally purchased them.  On top of that, these files aren't editable or openable without design programs but I am available and willing to update them whenever you need.

I'm curious where all this interest is coming from, why they are needed urgently, and if there is anything to be worried about.  I have enjoyed working with you and helping transform the look of Malley's since my arrival and want to continue to do so.

Please let me know if you have any questions.

(Doc. 64-1 at 868; Doc. 73-14 at 1930.)

In response, Dan Malley stated:

You seem to forget that when you were hired … it was stressed to you that all work was to be uploaded in our Drop Box and you agreed and had no problem. If you remember, this was since the previous graphic artist had work that we could not locate for you to use, and you were sitting in my office, and we discussed that you were to upload all files of all work that you were paid to do for Malley's Chocolates to prevent this from happening again.

Nowhere in writing or in conversation did you ever mention that you owned the work you were paid to do from Malley's. It is not on any of your invoices you have ever given to us. If it was, we never would have agreed to it. We work with other private contractors, and we own all the work they do for us since they are paid for the work. You never presented a contract stating differently.

I expect all files to be uploaded by this Wednesday by 12 noon.

I find it a bit strange that you now have this belief that since you were told from day 1 what was expected, and you agreed and why did you not say something last week when you were in my office and we requested you to upload the files by Friday. You even committed to doing it.

(Doc. 65-1 at 1111-13; Doc. 73-14 at 1931.)

After this exchange, Hilber continued to do graphic design work for Malley's.  (Doc. 69-1 at 1525-26; Doc. 73-14 at 1935.)  In October 2021, a fee dispute arose between Hilber and Malley's, which led to Hilber filing litigation in the Cuyahoga County Court of Common Pleas. (Doc. 45 at ¶¶ 86-88.)

Hilber did not produce the native files to Malley's.  (Doc. 64-1 at 865, 869-73.)  Between October 10, 2021, and July 12, 2022, Hilber registered 12 copyrights for a total of 288 images,

photographs, and designs she created as advertisements for Malley's.  (Doc. 45 at ¶¶ 10-77; Doc. 76-1.)

Throughout its history, Malley's regularly paid graphic designers either as W2 employees or as independent contractors.  (Doc. 75 at 2241.)  Malley's always paid independent contractors hourly.  (*Id.*; Doc. 65-1 at 997, 1037.)  From 2007 to 2016, prior to hiring Hilber, Malley's employed a full-time graphic designer, Dave Haney.  (Doc. 66-1, Haney Depo., at 1210.)  From 2016-2018, Haney worked for Malley's as an independent contractor and billed Malley's on an hourly basis.  (*Id.* at 1226.)  As an independent contractor, Haney had no expectation he owned the intellectual property rights for the graphic design work he created for Malley's.  (*Id.* at 1226-27.)  From October 2021 to March 2022, Miranda Tulcewicz did graphic design for Malley's.  (Doc. 71-1, Tulcewicz Depo., at 1669-70.)  Tulcewicz understood Malley's owned all the work she did for them.  (*Id.* at 1683.)  From February 2022 to September 2023, Amanda Nugent did graphic design for Malley's.  (Doc. 67-1, Nugent Depo., at 1256-58.)  Nugent first did freelance work for Malley's and became a full-time graphic designer for them in March 2022.  (*Id.*)  Nugent had no expectation she owned the intellectual property rights for the work he created for Malley's.  (*Id.* at 1258-60.)

After Hilber's relationship with Malley's ended, subsequent graphic designers used or modified Hilber's designs to make updated advertising campaigns.  (Doc. 65-1 at 1074-80; Doc. 67-1 at 1309-11; Doc. 71-1 at 1677-81.)  Modifications included updating the designs for new seasons, new prices, new products, etc.  (Doc. 65-1 at 1074-80; Doc. 67-1 at 1309-11; Doc. 71-1 at 1677-81.)  Hilber sent Malley's demands to cease using her work in March 2022 and September 2022.  (Doc. 65-1 at 1080-87; Doc. 73-11; Doc. 73-12.)

Malley's alleges Hilber has displayed photographs of Malley's products on her Instagram and Facebook accounts, including the following:





(Doc. 49 at 746-48, ¶¶ 17-19; *see also* Doc. 73-28.)  She also featured photographs of Malley's products on her personal website, including an image of a Malley's Bordeaux Sunday:



Specializing in Print, Web, Photography, Marketing, Packaging,
Presentation and Branding Design

Email caroline@carolinehilber.com for Full Access Password



(*Id.* at 748-49, ¶ 20.)  Malley's asserts Hilber uses these photographs of Malley's artwork, as well as the hashtags "#malleys" and "#graphicdesigner," to advertise her services as a graphic designer.  (*Id.* at 746-49, ¶¶ 17-21; Doc. 64-1 at 940; Doc. 81 at 3467.)  Malley's further asserts Hilber's use of its name, trademarks, or trade dress was unauthorized.  (Doc. 49 at 749, ¶ 21.)

### B.    Procedural History

In December 2022, Hilber initiated this action.  (Doc. 1.)  Hilber alleges from November 2021 through the present, Malley's unlawfully and willfully infringed on her copyrighted materials on at least 528 occasions.  (*See* Docs. 1, 45; Doc. 73-2; Doc. 73-31.)  She claims Malley's had its designers extract elements out of Hilber's copyrighted images for use in Malley's ads after her relationship with Malley's ended.  (*See* Docs. 1, 45.)  Hilber brings four claims: (1) Count I, Declaratory Judgment/Injunctive Relief; (2) Count II, Ohio Deceptive Trade Practices (ORC § 4165.02); (3) Count III, Unfair Competition; (4) Count IV, Copyright Infringement.  (*Id.*)

Malley's also asserts counterclaims against Hilber.  (*See* Docs. 7, 49.)  Malley's alleges Hilber features Malley's products and trademarks on her social media accounts and personal website to promote her graphic design services, which is unauthorized.  (*Id.*)  Malley's brings six counterclaims: (1) Count I, Trademark Infringement under 15 U.S.C. § 1114; (2) Count II, False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a); (3) Count III, Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c); (4) Count IV, Declaratory Judgment of Implied License related to Hilber's copyrighted materials; (5) Count V, Common Law Trademark Infringement; (6) Count VI, Ohio Deceptive Trade Practices Act.  (Doc. 49.)

Malley's moves for summary judgment on each of Hilber's claims.  (Doc. 75 at 2239.) Malley's asserts Hilber granted Malley's an implied license to use her graphic designs, which is a defense to copyright infringement.  (*Id.*)  While Malley's does not challenge any elements of Hilber's causes of action, Malley's argues the implied license prevents recovery on all four of her claims.  (*Id.* at 2239, 2248 n. 2.)

Hilber moves for summary judgment on: (1) Malley's assertion of implied license; (2) whether Hilber is entitled to prove profit damages as gross revenue under 17 U.SC. § 504(b); and (3) Malley's trademark counterclaims.  (Doc. 76 at 2263.)  The Court will address these matters in turn.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FED. R. CIV. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (citations and quotations omitted).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).  A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute.  *See* FED. R. CIV. P. 56(c) and (e).  Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs.  FED. R. CIV. P. 56(c)(3); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation and quotations omitted).  The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).  "The

ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.* "This standard of review does not differ when reviewing cross-motions for summary judgment versus a motion filed by only one party." *Hamilton Cnty. Educ. Ass'n v. Hamilton Cnty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016) (citing *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013)).

### B. Implied License

Each party focuses on the implied license affirmative defense, which is often discussed in the context of a copyright infringement claim. (*See* Docs. 75, 76.) Here, the facts are only contested as it relates to whether Hilber granted Malley's an implied license to use the graphic designs she created while she was an independent contractor for Malley's. Both parties assert the Court can decide this issue as a matter of law. (*Id.*)

Malley's moves for summary judgment on its affirmative defense of implied license. To Malley's, this defense precludes liability on each of Hilber's four causes of action. (Doc. 75 at 2247.) The issue for the Court is whether Malley's was authorized to use her copyrighted works, Malley's urges. (*Id.* at 2247-48.) Without addressing the elements of Hilber's underlying claims, Malley's sole argument is that Hilber granted Malley's an implied license to use the graphic designs she created for Malley's, including after their relationship ended. (*Id.* at 2247-53.) Malley's asserts there are no genuine issues of material fact on this issue, so summary judgment should be granted on all of Hilber's claims. (*Id.*)

Hilber also moves for summary judgment on Malley's affirmative defense of implied license. (Doc. 76 at 2266-75.) To Hilber, the Court should reach the opposite conclusion as a matter of law but disputes granting Malley's an implied license to use her graphic designs. (*Id.*)

Hilber argues the record evidence supports she did not grant Malley's an implied license, and even if she did, the scope of the license does not extend to derivative works.  (*Id.*)

### 1.    Affirmative Defense

To prevail on a claim of copyright infringement, a plaintiff "must show that (1) it owned a valid copyright in the designs, and (2) that [defendant] copied protectable elements of the work."  *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 476 (6th Cir. 2015), *aff'd*, 580 U.S. 405, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017) (citation and quotations omitted).  A plaintiff may prove copyright infringement either by providing direct evidence of copying, or by providing indirect evidence of copying through showing (1) access to the original work, and (2) substantial similarity between the original work and the allegedly infringing work.  *Kohus v. Mariol*, 328 F.3d 848, 853-54 (6th Cir. 2003) (citation and quotations omitted).

An "implied license" is an unwritten license to use a work that the court infers from the circumstances and from the conduct between the parties.  *See Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 398-99 (6th Cir. 2007).  "Courts have held that the existence of an implied license to use the copyright for a particular purpose precludes a finding of infringement." *Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998) (citation omitted).  Such a "non-exclusive license . . . is not . . . subject to [a] writing requirement" and "may be implied from conduct."  *Id.* The existence of an implied license is an affirmative defense, and as is the case with other affirmative defenses, the party claiming the defense bears the burden to establish it.  *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 752 (E.D. Mich. 2004).

To determine whether an implied license has been created, courts have adopted versions of the three-part test created by the Ninth Circuit in *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990) ("*Effects*").  *See Johnson*, 149 F.3d at 499-502.  Under that test, an implied license is created when "(1) a person (the licensee) requests the creation of a work, (2) the

creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996) (citing *Effects*, 908 F.2d at 558-59); *see also Johnson*, 149 F.3d at 500-01; *Mahavisno v. Compendia Bioscience, Inc.*, 164 F. Supp. 3d 964, 968 (E.D. Mich. 2016).  In *Asset Mktg. Sys., Inc. v. Gagnon*, the Ninth Circuit developed the following factors to assess the intent prong of the *Effects* test:

> (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible.

542 F.3d 748, 755 (9th Cir. 2008).

There is no precise formula for determining whether an implied license exists, but the Court should examine the intent of the parties from the "totality of the circumstances." *Jeffrey A. Grusenmeyer & Assocs., Inc. v. Davison, Smith & Certo Architects, Inc.*, 212 F. App'x. 510, 514 (6th Cir. 2007) (citing *Johnson*, 149 F.3d at 500-02).  The Court should explore, based on the facts and the circumstances of the individual case, whether the evidence supports the notion that the parties, in essence, made an agreement permitting the defendant to use the work, consistent with certain understandings or terms. *Johnson*, 149 F.3d at 500-02.  The key issue is intent, and the key question is whether the facts and the circumstances demonstrate that "the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used." *Id.* at 502.

To Malley's, the objective evidence surrounding Hilber's and Malley's relationship created an implied license as to her copyrighted work.  (Doc. 75 at 2250-53.)  The notable facts

are these: Hilber created the graphic designs at Malley's request; Hilber delivered the designs to

Malley's; and Hilber intended that Malley's distribute her designs.  (*Id.*)  Hilber's September

2021 email was the first time she indicated she retained ownership rights.  She agreed to upload

her native files to Dropbox when she was hired.  (Doc. 65-1 at 1111-13; Doc. 73-14 at 1931.)

The fact that Malley's planned to modify her work in the future was the very reason they

requested she upload her native files in Dropbox.  (*See* Doc. 81 at 3456; Doc. 65-1 at 1019,

1111-13.)  And Malley's graphic designers before and after Hilber had no expectation of

ownership rights in the designs they created at Malley's request.  (Doc. 66-1 at 1226-27; Doc.

67-1 at 1259-60, 1300-01; Doc. 71-1 at 1683.)  To Malley's, these facts establish Hilber granted

an implied license to use her graphic designs after their relationship ended, which is a complete

defense to all of Hilber's claims.

     Not surprisingly, Hilber argues the objective evidence establishes there is no implied

license.  (Doc. 76 at 2268-75.)  She never provided Malley's with her native files, and Malley's

knew she did not.  (Doc. 64-1 at 865, 869-73, 911-16.)  She only sent Malley's print-ready, non-

editable files, and Malley's never made modifications to her designs.  (*Id.*)  On one specific

occasion, Dan Malley reprimanded another Malley's employee for making unauthorized changes

to one of Hilber's designs.  (*Id.* at 901-02, 914-15.)  Hilber further claims her designs were for

specific, limited purposes, such as seasonal ad campaigns.  (*Id.* at 871, 885-87.)  She testified she

verbally told Dan Malley she retained ownership rights in her designs prior to her September

2021 email but could not recall when.  (Doc. 64-1 at 871-73.)  To Hilber, these circumstances

demonstrate Malley's had no license or authority to modify her work during their relationship.

And even if the Court finds Malley's generally had an implied license during their relationship,

Hilber asserts any implied license does not extend to derivative works whereby subsequent Malley's graphic designers altered her work without her consent.  (Doc. 76 at 2272-75.)

Here, Malley's requested that Hilber create graphic designs to be used in marketing campaigns and on packaging.  Hilber created the graphic designs and delivered them to Malley's.  However, there is a genuine issue of material fact as to Hilber's intent.  Malley's asserts Hilber agreed to provide her native files and knew Malley's would distribute and modify her designs in the future, including after their relationship ended.  Hilber asserts she only ever provided Malley's with non-editable files limited to specific campaigns, and both parties knew Hilber retained all rights to modify her designs.  With no written agreement between the parties, they put forth conflicting characterizations of their business arrangement and Hilber's intent.  But the Court cannot make credibility determinations or "weigh" conflicting evidence on summary judgment.  *Payne*, 767 F.3d at 530.  This fact issue precludes summary judgment on Malley's implied license affirmative defense.  *See Johnson v. Jones*, 885 F. Supp. 1008, 1015 (E.D. Mich. 1995) (finding implied license determination poorly suited for summary disposition where parties had no written agreement and intent was a crucial element of the claim).

Although in Hilber's motion she asserts non-movant Malley's does not contest the lack of implied license for derivative works, the Court is not persuaded.  (Doc. 88 at 4177.)  Malley's maintains Hilber understood Malley's would use her designs after their relationship concluded, such that the implied license extends to derivatives.  (Doc. 81 at 3456.)  In viewing the facts in the light most favorable to non-movant Malley's on this point, questions of fact remain as to whether an implied license existed, and whether the scope of any implied license included modifications or derivatives.  (*See* Docs. 76, 81, 88.)  Whether, based on the entirety of the parties' business arrangement, Hilber intended to grant Malley's an implied license will be

decided by a jury.  Accordingly, both motions for summary judgment on Malley's implied license affirmative defense are denied.

### 2.      Declaratory Judgment Action

In addition to the implied license affirmative defense, Hilber also moves for summary judgment on Malley's declaratory judgment counterclaim on the implied license theory.[2]  (Doc. 76 at 2266.)

Courts have substantial discretion in deciding whether to hear declaratory judgment actions.  *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 563 (6th Cir. 2006) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  In exercising this discretion, trial courts in the Sixth Circuit consider five factors: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective."  *Id.* at 564 (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Here, the first, second, and fifth factors weigh against exercising discretion to resolve Malley's declaratory judgment counterclaim.  The declaratory relief depends entirely on the outcome of Hilber's copyright claims and Malley's implied license affirmative defense.  For the reasons described above, whether Hilber intended to grant Malley's an implied to use the graphic designs she created for Malley's will go to a jury.  This counterclaim does not add anything to

---

[2] This is Counterclaim Four.  (*See* Doc. 49 at 751-52, ¶¶ 38-45.)

the relief that otherwise could be available to the parties. Accordingly, the Court declines to exercise discretion over Counterclaim Four. That counterclaim is dismissed, and Hilber's Motion for Summary Judgment as to Counterclaim Four is denied as moot.

### C. Copyright Damages

Setting aside the implied license issue, Hilber asserts she is entitled to prove copyright profit damages as gross revenue under 17 U.S.C. § 504. (Doc. 76 at 2275-77.) She argues she met her initial burden of establishing revenue, but Malley's refused to provide deductible expenses and its elements of profit attributable to other factors in discovery. (*Id.*; Doc. 73-34 at 2179-80; Doc. 70-1 at 1621-36.) To Hilber, Malley's has not met its burden to offset gross revenue, and the Court should conclude she is entitled to profit damages in the amount of the gross revenue figure as a matter of law.

Under 17 U.S.C. § 504(a), a copyright infringer "is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see also Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 994 (6th Cir. 2024) ("*Premier*").

Hilber argues she met her initial burden of demonstrating profit damages by presenting proof of Malley's gross revenues for the products related to the copyrights at issue. (*See* Doc. 76-2 at 2276.) Hilber requested Malley's produce its relevant deductible expenses and elements of profit attributable to other factors in discovery, but Malley's refused to provide that

information.  (*Id.* at 2276-77.)  Hilber also claims Malley's Rule 30(b)(6) witness was not prepared for these topics.  (*See* Doc. 70-1 at 1621-36.)  Hilber asserts that these discovery failures prevent Malley's from presenting evidence to offset its gross revenue number.  Without any ability to offset the gross revenue amount, Hilber urges that she is entitled to gross revenue as the measure of profits under 17 U.S.C. § 504(b).  (Doc. 76 at 2277.)

Malley's challenges Hilber on this point by directing the Court to competing expert reports addressing the measure of alleged damages.[3]  (*See* Doc. 81 at 3459-60.)  While Hilber's expert opines that she is entitled to Malley's gross revenue for the alleged infringing products, Malley's expert calculates Hilber's actual damages and describes other factors that contribute to Malley's sales, which would offset the gross revenue amount.  (*Id.*)

As the movant, Hilber must support her arguments.  *See Williams*, 9 F.4th at 430; FED. R. CIV. P. 56(a).  Hilber has not done so.  She has not directed the Court to any authority supporting her contention that the damages she seeks, as argued here, can be determined by the Court as a matter of law.  *See Premier*, 93 F.4th 994 ("The calculation of expenses and allocation of profits, no surprise, are fact driven.").  She also has not provided sufficient legal support to persuade the Court that Malley's cannot reduce the damages she seeks by deductible expenses or profits attributable to other factors.  To the extent Hilber seeks to prevent Malley's from introducing evidence on damages at trial that Malley's purportedly failed to produce in discovery, she may object to specific evidence or testimony at the appropriate time.  *See* FED. R. CIV. P. 37(c)(1).

---

[3] Although the parties' experts are both subject to challenge, the Court can resolve Hilber's summary judgment request to limit profit damages to gross revenue without considering the expert reports.

### D.      Malley's Remaining Counterclaims

Malley's brings five other counterclaims against Hilber for trademark infringement under 15 U.S.C. § 1114 (Counterclaim I); false designation of origin or sponsorship, false advertising, and trade dress infringement under 15 U.S.C. § 1125(a) (Counterclaim II); trademark and trade dress dilution under 15 U.S.C. § 1125(c) (Counterclaim III); common law trademark infringement (Counterclaim V); and violation of the Ohio Deceptive Trade Practices Act (Counterclaim VI).  (Docs. 7, 49.)  The counterclaims relate to Hilber's allegedly unauthorized use of Malley's product images and logos on her social media and personal website.  (*Id.*)  To Malley's, Hilber's use of Malley's trademarks or trade dress, as well as the hashtags "#malleys" and "#graphicdesigner", conveys a message to her potential graphic design customers that Malley's approves of her services.  (Doc. 81 at 3461, 3467.)  She is therefore receiving a financial benefit from the unauthorized use of Malley's marks, Malley's urges.  (*Id.*)  Malley's seeks injunctive relief to enjoin Hilber from using its trademarks or trade dress, as well as damages.  (Doc. 49 at 754-55.)

Hilber moves for summary judgment on all remaining counterclaims.  (*See* Doc. 76 at 2277-80; Doc. 88 at 4179-83.)  She asserts Malley's cannot state a claim for trademark infringement (Counterclaim I) because Malley's cannot prove the element of likelihood of confusion.  (Doc. 76 at 2278.)  Because claims for trade dress infringement (Counterclaim II), common law trademark infringement (Counterclaim V), and violations of the Ohio Deceptive Trade Practices Act (Counterclaim VI) also require the likelihood of confusion element, these counterclaims also fail, Hilber urges.  (*Id.*)  Finally, Hilber argues Malley's cannot state a claim for trademark or trade dress dilution (Counterclaim III) because Malley's cannot prove dilution.  (*Id.* at 2779-80.)

### 1.    Trademark Infringement (Counterclaim I)

To state a claim for trademark infringement, "a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). "The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Id.* at 610 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)). "In determining whether a likelihood of confusion exists, a court will typically weigh the following eight factors: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines." *Id.*

Hilber argues the social media posts and images on her website that were posted during her association with Malley's constitute nominative fair use statements of her own work history or portfolio.  (Doc. 88 at 4179-80; Doc. 73-28.)  She is not in the same business as Malley's because she is a graphic designer, not a manufacturer or distributer of candy or chocolate.  (Doc. 76 at 2277-80.)  She asserts no reasonable consumer would be confused by the photos of Malley's products on her social media or website showcasing her graphic design work.  (*Id.* at 2278.)  Her social media posts include reposts of Malley's own postings.  (Doc. 64-1 at 939-40.)

Malley's cannot prove actual confusion, Hilber urges.  (Doc. 76 at 2279.)  She points to the deposition testimony of Dan Malley, then the Vice President of Marketing.  Dan Malley affirmatively stated Malley's could not identify a single member of the public who was or would be confused by Hilber's posts of graphic design work that included Malley's trademarks.  (Doc.

65-1 at 1131-33.)  During Hilber's business relationship with Malley's, Dan Malley was aware she had its logo on her website, but he never asked her to remove it.  (Doc. 65-1 at 997-99.)  In fact, he joked with Hilber that the Malley's logo on her website should be higher up than one of Hilber's other clients.  (*Id.* at 997-98; Doc. 64-1 at 947-48.)  Hilber asserts her display of Malley's products is no different than the free advertising Malley's receives when thousands of social media users post photos of Malley's products.  (*See* Doc. 65-1 at 1097-98.)  Dan Malley was tasked with determining if other individuals or competitors were improperly using Malley's likeness, but never undertook any effort to determine whether the thousands of social media posts displaying Malley's marks were improper.  (*Id.* at 1097-1101.)  And finally, Hilber asserts it is undisputed that she has not obtained any personal gain, including financial gain, from her posts.  (Doc. 76 at 2279; Doc. 76-4; Doc. 64-1 at 933-34.)  To Hilber, these facts demonstrate Malley's cannot prove the necessary element of likelihood of confusion.

Malley's responds Hilber is not entitled to summary judgment on its trademark infringement claims.  Malley's asserts Hilber is using Malley's marks to advertise her own graphic design services, which is unauthorized.  (Doc. 49 at 746-49; Doc. 81 at 3460-67.)  Malley's argues it has presented evidence that Hilber continues to use its trademark on her social media pages after Malley's terminated its business relationship with her, and after it advised her to stop doing so.  (Doc. 81 at 3466-67.)  She therefore is holding herself out as a graphic designer for Malley's when she is not.  (*Id.*)  Specifically, Malley's points to her use of the hashtags "#malley's" and "#graphicdesigner" as evidence of her intent to mislead the public by creating the appearance she is affiliated with Malley's.  (*Id.*)

Malley's acknowledges some evidence of likelihood of confusion is generally required.  (*Id.* at 3466.)  But Malley's asserts under Sixth Circuit caselaw, continued unauthorized use of a

trademark is enough to establish likelihood of confusion.  (*Id.*)  To Malley's, because Hilber continues to display Malley's products and images on her website and social media, that is enough to establish a likelihood of confusion.  (*Id.* at 3466-67.)

Malley's relies on *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997), but this reliance is misplaced.  In *U.S. Structures*, a franchisee's license was terminated, but the former franchisee continued to use the franchisor's mark.  130 F.3d at 1190. The court held proof of the continued unauthorized use of the mark by one whose license to use the mark had been terminated was sufficient to establish "likelihood of confusion" for trademark infringement.  *Id.*  There, defendants were providing the same service as the franchisor.  *Id.* Individuals who contracted with defendants after the franchise was terminated believed they were purchasing the franchisor's products.  *Id.*  The court found defendants intentionally used the franchisor's trademark to obtain business.  *Id.*  Hilber is not holding herself out as providing the same products as Malley's.  She is sharing Malley's social media posts and displaying images of work she created.  The Court cannot extend the holding in *U.S. Structures* to this scenario.

Here, Hilber is not selling candy or chocolate.  She is a graphic designer.  She is not competing with Malley's for customers.  There is no relatedness of goods or services.  "[I]f the products are unrelated, confusion is highly unlikely."  *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003).  And according to Dan Malley, it is undisputed there is no evidence of actual confusion.  (Doc. 65-1 at 1131-33.)  While Malley's need not provide evidence of actual confusion, it has failed to put forth any evidence establishing a likelihood of confusion necessary for its trademark infringement counterclaims to proceed to a jury.  Even in viewing the facts most favorably to Malley's, no rational trier of fact could find that Hilber, by displaying

Malley's products and logos on her social media or personal website, likely caused confusion among consumers seeking to purchase Malley's products.

> ### 2. False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a) and Ohio Deceptive Trade Practices Act (Counterclaims II and VI)

Malley's asserts counterclaims under 15 U.S.C. § 1125(a) (Counterclaim II) and the Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02, (Counterclaim VI) for Hilber's alleged unfair competition. (Doc. 81 at 3460-61.) To Malley's, these provisions apply because by creating the appearance of an association with Malley's, Hilber is trying to take advantage of Malley's goodwill to burnish her own image. (*Id.* at 3461.) Malley's argues Hilber tries to avoid these claims by mischaracterizing them as a trade dress claim. (*Id.* at 3460.)

To succeed on a false designation of origin claim under 15 U.S.C. § 1125(a), Malley's must show the false designation creates a "likelihood of confusion." *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 694 (6th Cir. 2003) (quoting *Johnson*, 149 F.3d at 502). The same is true under the Ohio Deceptive Trade Practices Act. *Id.* The Court analyzes likelihood of confusion in the same way it does for a trademark infringement claim. *Id.*

To the extent Malley's points to Hilber's use of hashtags for its unfair competition claims, this argument also fails. (*See* Doc. 81 at 3461-65.) Malley's cites Hilber's testimony where she admits to using the hashtags "#malleys" and "#graphicdesign" in her Instagram posts. (Doc. 64-1 at 936, 939-40.) If someone searches for "Malley's," then Hilber's post will pop up, along with the fact that she is technically advertising packaging design services. (*Id.* at 940.) To Malley's, this constitutes unfair competition. (Doc. 81 at 3463.) When a Hibler posts a picture of a Malley's box of chocolates, she is not a typical customer telling the world she likes the product. (*Id.* at 3464.) Hilber is telling the world that Malley's hired her as a graphic designer, Malley's likes her work, and so should you, Malley's urges. (*Id.*) Malley's argues the public's

belief that it sponsored or approved of Hilber's use of the mark satisfies the confusion requirement.  (*Id.*)

Malley's reliance on non-binding caselaw dealing with the use of hashtags is unpersuasive.  (*See* Doc. 81 at 3463-64 (citing cases).)  In the cases Malley's cites, the defendants used hashtags to create a public impression their products or services were endorsed by the trademark owner.  (*Id.*)  In those case, the use of hashtags was likely to cause confusion because the defendants were selling the same products or services as the trademark owner and wanted to convey an association to obtain business.  (*Id.* at 3463-64.)  The cases are distinguishable.  Hilber is not selling candy or chocolate.  She is a graphic designer.  She is not unfairly competing with Malley's for consumers looking to buy chocolate by using the hashtag "#malleys."  Hilber has not received any financial gain from her posts.  (Doc. 76 at 2279; Doc. 76-4.)  And there is no evidence of actual confusion.  (Doc. 65-1 at 1131-33.)

Additionally, Malley's takes portions of Hilber's testimony out of context to assert she uses Malley's marks on her social media to promote her graphic design services.  (*See* Doc. 81 at 3462.)  However, a review of her deposition transcript reveals she was answering questions about marketing and branding in general.  (Doc. 64-1 at 924-934.)  In other places, Malley's uses quotation marks to suggest it is quoting from Hilber's testimony about her intent to create an affiliation with Malley's, with no citations to the record.  (Doc. 81 at 3464.)  But the phrases in quotation marks do not appear in Hilber's deposition transcript.  (*See id.*; Doc. 64-1.)  For the same reasons discussed above, Malley's has not put forth evidence of a likelihood of confusion.

### 3.    Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c) (Counterclaim III)

To state a trademark or trade dress dilution claim, Malley's must show (1) the senior mark is famous; (2) it is distinctive; (3) the junior use must be a commercial use in commerce;

(4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 577 (6th Cir. 2000); *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004). Hilber argues Malley's cannot establish the elements of dilution. (Doc. 76 at 2279-80; Doc. 88 at 4182-83.)

Malley's argues where an identical trademark is displayed, that constitutes circumstantial evidence of dilution. (Doc. 81 at 3468-69.) Malley's points to *State Farm Mut. Auto. Ins. Co. v. Sharon Woods Collision Ctr., Inc.*, No. 07CV457, 2007 WL 4207158, at *9, 2007 U.S. Dist. LEXIS 86651 (S.D. Ohio Nov. 26, 2007). (*See* Doc. 81 at 3468-69.) There, State Farm brought a claim for trade dress dilution against an autobody shop that refused to remove a sign using a State Farm trademark. *State Farm*, 2007 WL 4207158, at *9. The court mentioned actual dilution could be proven through circumstantial evidence where the junior and senior marks are identical, but the court did not rule on the dilution claim on summary judgment where other issues of fact remained. *Id.* Malley's also cites other non-binding caselaw for the assertion that identical trademarks constitute circumstantial evidence of dilution. (Doc. 81 at 3468-69.)

Without a single citation to any evidence in the record, Malley's asserts "[t]he same result is warranted in this case." (*Id.* at 3469.) As discussed above, it is undisputed that Hilber has not obtained any personal gain, including financial gain, from her posts. (Doc. 76 at 2279; Doc. 76-4; Doc. 64-1 at 933-34.) Malley's does not direct the Court to any evidence that shows by posting or reposting Malley's product photos and advertisements on her social media or personal website, Hilber is using junior marks in commerce. And although Malley's refers to the use of identical marks, Malley's fails to cite to any evidence on this point. (Doc. 81 at 3467-69.) And Dan Malley could not point to any specific evidence of dilution. (Doc. 65-1 at 1133-34.)

Ultimately, Malley's does not support this counterclaim with evidence to establish the necessary elements of a dilution claim. Hilber is not using the Malley's marks depicted in her posts in commerce. And Malley's cannot distinguish Hilber's posts from the thousands of other social media users that post Malley's marks. (*See* Doc. 65-1 at 1097-1101; Doc. 73-24.) Even in viewing the facts in the light most favorable to Malley's, Malley's has not met its burden to demonstrate a triable issue of material fact on this counterclaim.

### 4.      Common Law Trademark Infringement (Counterclaim V)

This counterclaim is also subject to a likelihood of confusion standard. *Interactive Prods. Corp.*, 326 F.3d at 694 ("claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same 'likelihood of confusion' standards as their federal counterparts") (citations and quotations omitted). For the reasons stated above, Malley's has not met its burden to establish likelihood of confusion, and its common law counterclaim also fails.

Hilber's motion for Summary Judgment on Counterclaims One, Two, Three, Five, and Six is granted, and these counterclaims are dismissed.

## III.      CONCLUSION

For the reasons stated herein, Defendant Malley's Candies, Inc.'s Motion for Summary Judgment (Doc. 75) is DENIED, and Plaintiff Caroline Hilber's Motion for Summary Judgment (Doc. 76) is DENIED in part and GRANTED in part.

**IT IS SO ORDERED.**

**Date:** August 19, 2025

_____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE